# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROMEO ARVELO,

      Petitioner,

v.                                       CASE NO: 8:07-CV-1107-T-30EAJ

ATTORNEY GENERAL, STATE OF
FLORIDA and JACK SAPP, Warden,

      Respondents.

_____/

## ORDER

THIS CAUSE comes before the Court upon Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1), the Government's Response (Dkt. #7) filed in opposition thereto, and Petitioner's Reply (Dkt. #10).

## BACKGROUND

This Court issued an Order (Dkt. #12) on December 16, 2008, finding that Petitioner's §2254 motion (Dkt. #1) was time barred. However, this order mistakenly interpreted Lawrence v. Florida, 549 U.S. 327, 127 S. Court. 1079, 166 L. Ed. 2d 924 (2007). The Government's response (Dkt. 14) on January 13, 2009, correctly interprets Lawrence, concluding that Petitioner's §2254 writ of habeas corpus is timely. Accordingly, this Court will now address the merits.

On February 28, 2000, Petitioner Romeo Arvelo was charged with various drug-related offenses. Petitioner was represented by Craig A. Huffman, Esq. According to

Petitioner, the State offered to reduce the charges if Petitioner provided particular information, which he contends he provided. Petitioner asserts that even though he provided the information the State sought, the State's promises were not fulfilled. Thereafter, Petitioner hired Ralph Fernandez as his attorney who acted as co-counsel to Mr. Huffman.

On September 13, 2000, Petitioner, through counsel, filed a Motion to Compel Specific Performance of Plea Agreement. On September 13, 2000, the Thirteenth Judicial Circuit Court held a hearing on the motion. At that hearing, the state advised Petitioner that they were still willing to offer him their original deal, however, that deal was that he would receive 20 to 40 years. After the hearing, the court found that there was no contract to enforce, evidenced by the fact that Petitioner himself indicated the negotiation was ongoing. The court concluded that no agreement had ever been reached, denied the motion, and told Petitioner that he had 15 minutes to decide if he would enter a plea. Mr. Huffman and Mr. Fernandez then became embroiled in a disagreement.

Mr. Huffman wanted to proceed to trial, but Mr. Fernandez wanted to enter a plea. Based on their disagreement, Mr. Huffman immediately withdrew from the case. At that point, Mr. Fernandez advised the court that Petitioner was ready to change his plea. The state then put on the record the terms of the agreement. On September 13, 2000, Petitioner entered a guilty plea to the following counts: continuing criminal enterprise (Count 1); RICO violation (Count 2 and 3); conspiracy to traffic heroin (Count 4); trafficking in illegal drugs (Counts 13, 14, 15, 17, and 19); and unlawful financial transaction (Counts 16 and 18).

Sentencing was scheduled for October 26, 2000. In the meantime, Mr. Fernandez withdrew from the case, and Petitioner was appointed new counsel, Joseph M. Davis Esq., who filed two motions to continue sentencing. A sentencing hearing was finally scheduled for December 4, 2002. At that hearing, Mr. Davis filed a motion to continue and a motion to withdraw the plea, arguing that it was involuntarily entered. The motions were denied and Petitioner received a 40 year sentence. Petitioner, represented by Assistant State Attorney Richard P. Albertine, appealed to the Second District Court of Appeal. The sole issue his appellate counsel raised was whether the trial court erred in sentencing Petitioner without properly accepting a change of plea. On December 12, 2003, the Second District affirmed and issued the mandate on January 12, 2004.

On February 25, 2004, Petitioner filed a pro se motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. In that motion, Petitioner raised two claims (with sub-claims) alleging trial counsel was ineffective for: (1) threatening to withdraw from the case if Petitioner proceeded to trial (advising Petitioner he would be sentenced to life imprisonment if he did not accept the plea and failing to give Petitioner a chance to reject or accept the plea), and (2) failing to advise Petitioner of his right to seek suppression of the drugs, money, properties, and all goods seized during the illegal arrest. On August 24, 2004, the trial court issued a written order granting an evidentiary hearing on part of both grounds.

On January 14, 2005, Petitioner filed an amended motion for post-conviction relief containing four additional grounds. On January 14, 2005, Petitioner's new counsel, Assistant

Public Defender Michelle Florio, filed a motion to amend. An evidentiary hearing was held on March 30, 2005. On April 29, 2005, the circuit court issued a lengthy order denying ground 1 (in part) and 2 (in part) of the original motion, and denying grounds 4, 5, 6, and 7 of the amended motion, concluding that Mr. Fernandez did not threaten to withdraw. Petitioner appealed and the Second District affirmed on June 9, 2006.

On September 2, 2005, while the Rule 3.850 proceeding was still pending, Petitioner filed a petition for writ of habeas corpus. Petitioner argued that his appellate counsel was ineffective for failing to raise the issue of whether the circuit court improperly denied his motion to withdraw the plea. The Second District denied the petition on September 14, 2005. Petitioner filed the instant motion on June 22, 2007.

## DISCUSSION

Petitioner raises the following grounds in support of his motion:

**Ground One:**  Trial counsel was ineffective for threatening to withdraw from the case if petitioner did not enter a plea, thus rendering the plea involuntary.

**Ground Two:**  Appellate counsel was ineffective for failing to raise the issue of the denial of the defense motion to withdraw plea filed prior to sentencing.

The Court denies Petitioner's motion on both grounds.

## AEDPA STANDARD OF REVIEW

Petitioner's federal petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 336, 138 L. Ed. 2d 481, 117 S. Court. 2059 (1997). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th

Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693, 152 L. Ed. 2d 914, 122 S. Court. 1843 (2002); see also, Bell v. Cone, 160 L. Ed. 2d 881, 125 S. Court. 847 (2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given the benefit of the doubt) [citing 28 U.S.C.A. § 2254(d)]). Pursuant to 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S. 63, 71-72, 155 L. Ed. 2d 144, 123 S. Court. 1166 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza, 540 U.S. 12, 157 L. Ed. 2d 263, 124 S.Ct. 7, 10 (2003); Clark v. Crosby,

335 F.3d 1303, 1308-10 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 125 S.Ct. 1432, 1438, 161 L.Ed.2d 334 (2005); Williams v. Taylor, 529 U.S. 362, 405-06, 146 L. Ed. 2d 389, 120 S. Court. 1495 (2000). A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Packer, 537 U.S. 3, 8, 154 L. Ed. 2d 263, 123 S. Court. 362 (2002); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 125 S.Ct. at 1439. An objectively unreasonable application of precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005).

Finally, a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Henderson v. Haley, 353 F.3d 880, 890-91 (11th Cir. 2003).

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). It is well-established that to prevail on an ineffective assistance claim, the accused must satisfy the two-prong inquiry of Strickland v Washington, 466 U.S. 668, 687, 104 S. Court. 20052, 80 L.Ed.2d 674 (1984). First, Petitioner must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Therefore, if Petitioner fails to establish either deficient performance or prejudice, the court need not address the other prong. Id. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,...that course should be followed."); see also Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). The standards

of effective assistance set forth in <u>Strickland</u> apply to appellate counsel, as well as to trial counsel. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987). In this case, Petitioner has failed to establish that the state court decisions were "contrary to, or involved an unreasonable application of" <u>Strickland</u> under 28 U.S.C. §2254(d).

**<u>Ground One:</u>          Ineffective Assistance of Trial Counsel.**

In ground one, Petitioner asserts that his counsel at trial was ineffective for threatening to withdraw from the case if Petitioner did not enter a plea, thus rendering plea involuntary and violating Petitioner's Federal Due Process rights under the Fifth and Sixth Amendments, and under the United States Constitution.

In support of ground one, petitioner contends that his attorneys became embroiled in irreconcilable differences. Petitioner claims that he and Counsel Huffman agreed to proceed to jury trial but Counsel Fernandez insisted upon a guilty plea. Petitioner asserts that Counsel Huffman withdrew from the case and that counsel Fernandez threatened to withdraw from the case unless Petitioner entered a guilty plea, thereby coercing Petitioner into pleading guilty. Petitioner further contends that, pursuant to the Eleventh Circuit's holding in <u>Gallego v. U.S.</u>, 174 F.3d 1196 (11th Cir. Fla. 1999), the state court erred when it determined that Mr. Fernandez was more credible than Petitioner. Petitioner understands <u>Gallego</u> to hold that counsel's uncorroborated testimony cannot be considered more credible than defendant's uncorroborated testimony especially if the court makes no factual findings and that to do so would result in an unreasonable application of <u>Strickland</u>.

Petitioner has failed to establish that his counsel's performance was deficient or that counsel threatened to withdraw.  See Strickland, 466 U.S. at 697.  A cursory review of the record during the plea hearing demonstrates the fallacy of Petitioner's claim:

> THE COURT: Are you pleading to all those cases, sir, because you are in fact guilty?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: You understand that by entering these pleas you're giving up your right to a jury trial?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: The right to confront and cross-examine the State's witnesses, to call witnesses in your own behalf, to testify or not testify in your own behalf, in addition to that you'd be giving up your right to an appeal, sir, do you understand that?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And you still wish to enter this plea?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Has anyone made you any promises regarding these pleas other than the fact that you're going to be sentenced somewhere in the range of 20 to 40 years, that there will be a $10,000.00 cost of investigation, there will be court costs, the mandatory fines will be imposed and you are to give truthful testimony in any matters arising out of this; do you understand that?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Has anyone made you any promises or threats regarding you entering this plea?

| | |
|---|---|
| DEFENDANT: | No, sir. |
| THE COURT: | Other than what I just stated? |
| DEFENDANT: | No, sir. |
| THE COURT: | All right. Have you had sufficient time to discuss this with your attorney both Mr. Huffman and Mr. Fernandez? Have you had enough time to talk to them? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Are you satisfied with their services? |
| DEFENDANT: | Yes, sir. |

(Rcd. #19, Vol. 3 at 316-317).

Petitioner cannot now claim he was coerced into entering a plea after stating under oath on the record that he was not threatened. The statements made by Petitioner in open court are presumed true. United States v. Gonzolez-Mercado, 808 F.2d 796, 799-800 (11th Cir. 1987). A defendant will not be heard to disavow them at some later time in an attempt to overcome his guilty plea. Harvey v. United States, 850 F.2d 388, 396-98 (8th Cir. 1988). The record clearly demonstrates that Petitioner entered his guilty plea voluntarily. He has failed to provide sufficient evidence to meet the Strickland test for ineffective counsel. Not only is Petitioner estopped from refuting his own sworn testimony, his claim also fails because of the state court's factual findings.

After the circuit court held an evidentiary hearing, the court relied on substantial evidence in the record from which to conclude that Petitioner's counsel did not threaten to withdraw:

In ground 1, Defendant claims ineffective assistance of counsel due to counsel's threat to withdraw from the case if Defendant insisted on proceeding to trial, thereby violating Defendant's Fifth, Sixth, and Fourteenth Amendment rights. At the evidentiary hearing, Defendant testified, and when asked if his counsel Mr. Ralph Fernandez did anything to coerce him into taking the plea, Defendant responded:

> Well, he told me that if- - because of the fact that he didn't want to go to trial, he said that if I didn't accept the state's plea, which was his plea, that he would withdraw from my case.

(See March 30, 2005 Transcript, page 16, attached).

Subsequently, Defendant testified that he felt like he had no other option because Mr. Huffman had withdrawn from the case two minutes before that due to a conflict.

(See March 30, 2005 Transcript, pages 16 - 17, attached).

At the same hearing, Defendant's counsel Ralph Fernandez testified, and when asked if he had any discussions with Defendant about a plea in this case, he responded:

> Yes, but, you know, again, I think he understood that I had done this before a lot. I felt comfortable that he trusted my decision making, but I might add that it was not the traditional plea colloquy because we walked into a situation in which, when I talked to him in the back, he was flabbergasted by the events, and I said--and he asked me, as I recall, what can be done? I said, at this point not much can be done. And, you know, then we obviously had some discussions related to that. Again, you know, in a perfect world, you want an opportunity over a period of a couple of years to develop a wire and any defense thereto. This was not a perfect situation. Nevertheless, I felt that, given the fact that New York and Tampa could be resolved eventually for a time of, let's say, 10 years, given what I know about the quality of what else he could do - - and given the fact that I think Ken Morman's integrity is being put in question and that he would listen to - - that Curt Allen would listen to Ken, and under that understanding we proceeded. And he also knew that if he did not cooperate, that he would be looking at 20 to 40 years.

And I told him, realistically that, you know, that he could be facing 20 if the lawyers were not happy. I think I had even phrased it that way.

(See March 30, 2005 Transcript, pages 40-41, attached).

Moreover, when asked if Defendant ever expressed to him that he did not want to enter a plea and wanted to go to trial, Mr. Fernandez responded:

He was very passive. Mr. Arvelo showed great restraint even in facing - - as you can see, he's very passive and seems to be understanding. I don't know if that means that he's actually - - that he understands it or not. I don't know what goes through his mind. But I can tell you that nobody likes to be confronted in that fashion where you only have a few minutes. That happens though. And sometimes it happens and sometimes that's a legitimate plea.

(See March 30, 2005 Transcript, page 44, attached).

He further testified that there is no doubt that Defendant understood that he was entering an open plea with the ability to give substantial assistance for a potential sentence of somewhere between 20 and 40 years. (See March 30, 2005 Transcript, page 44, attached). Mr. Fernandez further testified that Defendant's plea was voluntarily entered.

(See March 30, 2005 Transcript, page 45, attached).

When asked if he ever promised him or threatened him in any way in order to get Defendant to enter the open plea, Mr. Fernandez responded:

Other than what I said, that, listen, if this thing works out, I'm going to get this thing taken care of, hopefully. I never said I am. I said I hope we can get this thing done and I think I can work New York into the mix.

(See March 30, 2005 Transcript, page 45, attached).

On cross-examination, Mr. Fernandez testified that Defendant did not discuss with him that he was ready to go to trial the next week, and when

asked if Defendant told him that he wanted to take the case to trial, he responded:

> Maybe we're talking about a - - no, I don't remember that. And I think I would remember that because things had collapsed. This is a case without a wire challenge, as I understood it, on the eve of trial with a demand for speedy trial being made and presumably a lot of intercepts with a principal target. So, you know, I myself would think - - I mean I don't - - I don't enjoy or look forward to going to trial or suggest I'm going to go to trial with any zeal on a case like that. That's the last thing you want to do is go to trial on a wire case, unless you're not mentioning the tape.

(See March 30, 2005 Transcript, pages 53 - 54, attached).

When asked if he felt that Defendant had no choice but to plead, Mr. Fernandez responded:

> No, he had a choice. Bit [sic] it would have been a poor choice. And I felt that I was doing the best that I could under these trying circumstances. And I, based on what I know about the case now, would recommend that he do the same thing, and this time come to fruition and bring it to a conclusion the way we had planned.
>
> Again, you've got to go back to that time. If you ask me in a perfect world, I would have liked another six months so that I could take statements and so forth and perhaps there could have been something dispositive in the case. But that would have left us with a big problem in New York, much bigger than this one.

(See March 30, 2005 Transcript, page 55, attached).

When asked if he ever intended to go to trial, Mr. Fernandez responded:

> Frankly, that did not come up. Again, from the time that I knew that I had to make a decision, you know, those minutes, I felt that this is a very reasonable disposition.

So you're right. You know, at that time, no. With more time, I may have. I don't think so. As a matter of fact, as of today, I still don't think so, because I haven't done the work and there's nothing that I have seen that leads me to believe that the outcome could have been different.

(See March 30, 2005 Transcript, pages 55 - 56, attached).

Moreover, when asked if he told Defendant that if he did not accept the plea, that he would withdraw as counsel in the case, he responded:

No. You see, here is the problem with that. And I read that and I thought it was somebody else, maybe Mr. Huffman that he was talking about. But if he was talking about me, I wouldn't say that because that would require my telling him that - - going into a long explanation as to why I just came on board but I'm getting out. And then he might think that I'm not that good, because when someone like me gets on a case, you kind of can't get out.

(See March 30, 2005 Transcript, page 56, attached).

When asked if he thought it was a good deal for Defendant, Mr. Fernandez responded:

It would have been a good deal three months later, it would have been a good deal. But what we're missing is the fact that when I walked in, Ken told me that he was going to hang him. Curt, whom I respect a great deal, at the time, shall I say, you know, would carry out what he said he would carry out. So all of a sudden, I realized that, whether it was three months or later or not, they were going to give him life or try to. So then I go, whoa, time out, boys. You know, let's chill, you know, let's calm down. What happened here? You know, that type of thing. Let's calm down.

So whether I would have been successful or not, we would have had a big problem and he would have received the brunt of it, and I was worried about that.

(See March 30, 2005 Transcript, page 58, attached).

Lastly, he testified that he does not threaten to get off a case, and he has never left anyone hanging.

(See March 30, 2005 Transcript, pages 60-61, attached).

At the same hearing, Defendant's counsel Mr. Craig Huffman testified that Defendant made the decision to enter the plea.

(See March 30, 2005 Transcript, page 71, attached).

The court then evaluated the conduct of Mr. Fernandez.

After reviewing this portion of ground 1, the testimony, evidence, and argument presented on March 30, 2005 and March 31, 2005, the court file, and the record, the Court finds the testimony of Mr. Fernandez to be more credible than that of Defendant. Therefore, the Court finds that Mr. Fernandez did not threaten to withdraw from the case if Defendant insisted on proceeding to trial. Consequently, Defendant has failed to meet the first prong of Strickland in that he has failed to prove how counsel acted deficiently when Mr. Fernandez did not threaten to withdraw from the case if Defendant insisted on proceeding to trial. Since Defendant has failed to meet the first prong of Strickland. it is unnecessary to address the prejudice component. Downs v. State, 740 So. 2d 506, 518 n. 19 (Fla. 1999). As such, no relief is warranted upon this portion of ground 1.

(Rcd. Ex. #11 at 3-6).

The trial court's findings are entitled to a "presumption of correctness." See 28 U.S.C. §2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); Rolling v. Crosby, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless Rolling rebuts the presumption by clear and convincing evidence."). The Court concludes that Petitioner has failed to rebut the "presumption of

correctness." Id.

Petitioner relies on Gallego v. U.S., 174 F.3d 1196 (11th Cir. 1999), to argue that the state court made an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Gallego is contrary to Petitioner's position. In Gallego, the 11th Circuit explained:

> It is perfectly legitimate for the district court to find, based on all the evidence in the record, that a defendant's testimony about his participation in a drug scheme is not credible. The magistrate judge here, however, based the decision on the fact that defendant's allegations were unsubstantiated and incorrectly found as a matter of law that defendant could not carry his burden without presenting some evidence in addition to his own word, which is contrary to that of counsel's. The magistrate says nothing about the internal consistency of the defendant's testimony, or his candor or demeanor on the stand. Indeed, the magistrate does not even state simply why the defendant's lawyer is the more credible witness in this case. There is nothing in the report to indicate the magistrate weighed defendant's credibility. The fact that defendant's testimony is uncorroborated is not enough standing alone to support a credibility finding. Counsel's testimony was also unsubstantiated by other evidence.

> While we appreciate the concerns enunciated in Underwood, we cannot adopt a *per se* "credit counsel in case of conflict rule," which allows that in any case where the issue comes down to the "bare-bones testimony" of the defendant against the contradictory testimony of counsel, defendant is going to lose every time. We therefore remand for a new evidentiary hearing.

Gallego, 174 F.3d at 1198-99 (citations omitted).

Here, the state court found that Mr. Fernandez was more credible then Petitioner, a conclusion that was "based on all the evidence in the record" and thus "perfectly legitimate." Id. at 1198. Unlike the judge in Gallego, here the circuit court cited numerous portions of Mr. Fernandez's version of the facts, illustrating the "internal consistency" of his testimony. Id. And, Mr. Fernandez's testimony was supported, and Petitioner's undermined, by

Petitioner's own sworn testimony at the earlier plea hearing.

Petitioner, however, argues that Mr. Fernandez attempted to circumvent questions (Dkt. #10 at 7). Regarding the state court's inquiry as to whether Petitioner ever expressed that he did not want to enter a plea and instead go to trial, Petitioner emphasizes Mr. Fernandez's response: "He was very passive. Mr. Arvelo showed great restraint. . ." (Rcd. Ex. #11 at 3-6). Petitioner characterizes this statement as contradictory testimony, and attacks the notion that "one can be both very passive yet have showed great restraint [because] [b]eing passive and showing great restraint are at the opposite poles in behavior" (Dkt. #10 at 8). Petitioner concludes that Mr. Fernandez meant Petitioner "showed great restraint" in entering the plea. However, this interpretation does not prove that Petitioner's plea was coerced.

Regardless of what Mr. Fernandez meant, the ultimate determination as to the credibility of the witnesses was within the sound discretion of the state court. As such, Petitioner's interpretation is unavailing because it fails to rebut the "presumption of correctness" regarding the court's credibility finding by "clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Bell v. Cone, 543 U.S. 447, 455 (2005) ("As we have said before, §2254(d) dictates a highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt.") (internal marks and citation omitted). Moreover, there is ample evidence from which to conclude that the circuit court "weighed [Petitioner's] credibility." Gallego, 174 F.3d at 1198-99. The circuit court explained that Mr. Fernandez's testimony was supported by "the testimony, evidence,

and argument presented on March 30, 2005 and March 31, 2005, the court file, and the record" (Rcd. Ex. #11 at 3-6). Therefore, Petitioner's reliance on <u>Gallego</u> is misplaced.

Petitioner also argues that his constitutional rights were violated under <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). In <u>Hill</u>, the Supreme Court reiterated that the test for measuring a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>Id.</u> at 56 (citation omitted). Petitioner asserts that because Mr. Huffman stated that he had "alternative theories" for what appeared to be incriminating evidence, Mr. Fernandez cut off "alternative courses of action" by forcing Petitioner to plea. This argument is without merit. In <u>Hill</u>, the Court held that:

> the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence already set forth in <u>Tollett v. Henderson</u>, *supra,* and McMann v. Richardson*, supra.* The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

<u>Id.</u> at 58-59.

Because the circuit court indicated that Mr. Fernandez did not force Petitioner to plea, he did not cut off "alternative courses of action." Indeed, because Mr. Fernandez did not threaten Petitioner, Petitioner cannot establish that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u>

Finally, Petitioner argues that even if Mr. Fernandez did not threaten to withdraw, he still was unconstitutionally ineffective in advising Petitioner to enter the plea, because he "had no knowledge of the case, had done no investigation and only spoke with petitioner for a few minutes once . . ." (Dkt. #2 at 13). Under the exhaustion doctrine, Petitioner cannot rely on these factual assertions to support his claim because he did not assert them in either his initial or amended post-conviction motion (Rcd. Ex. #6 and #8). <u>See</u> <u>Jackson v. Caldwell</u>, 452 F.2d 1068, 1069 (5th Cir. 1972) ("No Georgia state court has had the opportunity to consider the underlying facts upon which appellant bases his claim. This [c]ourt has consistently held that the first opportunity to determine those facts should be afforded to the state courts.") (citations omitted).

However, even if Petitioner were not procedurally barred from presenting this argument, it would still not establish that Mr. Fernandez was rendered deficient performance in this regard. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88 ("[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.' . . . [T]he defendant must show that counsel's representation fell below an objective standard of reasonableness.") (citation omitted). The Court concludes that Petitioner fails to establish that Mr. Fernandez was not "a reasonably competent attorney" or that his advice, in light of the evidence that Petitioner was facing had he chosen to go to trial, was not "within the range of competence demanded of attorneys in criminal cases." <u>Id.</u>

To support his argument, Petitioner asserts that Mr. Fernandez wrote a letter to Mr. Huffman, wherein he mentioned that he had limited knowledge of the facts but advised Petitioner to take the plea based on what he heard at the hearing. Petitioner maintains that this letter is competent evidence on which to conclude Mr. Fernandez was incompetent.[1] Petitioner also emphasizes that at the evidentiary hearing on the post-conviction motion, Mr. Huffman stated that he would "absolutely not" have advised Petitioner to plead. (Rcd. Ex. #10 at 397). Yet after inquiry by the state court at the plea hearing, Petitioner stated that he had "sufficient time" to discuss entering the plea with both Mr. Huffman and Mr. Fernandez, and that he was "satisfied with their services" (Rcd. Ex. #19, Vol. 3 at 316-317). Petitioner cannot now express dissatisfaction with Mr. Fernandez after making these statements under oath. See U.S. v. Bahena, 223 F.3d 797, 806-07 (8th Cir. 2000) ("At the change-of-plea hearing, the defendant, after having been placed under oath, declared that he did understand the proceedings, that he was satisfied with his lawyer, and that he had committed the acts constituting the elements of the crimes alleged in the indictment . . . . Defendant's later conclusory claim that he did not understand what was going on rings hollow."). Finally, the amount of time Petitioner was with Mr. Fernandez is not dispositive. See U.S. v. Coleman, 231 Fed.Appx. 512, 515 (7th Cir. 2007) ("[T]here is no requirement that an attorney meet

---

[1] Petitioner provides a citation indicating that the letter is an exhibit within the evidentiary hearing transcript (Dkt. #2 at 13). However, the evidentiary hearing transcript does not contain a letter as an exhibit (Rcd. Ex. #10 at 327). See U.S. v. Cronic, 466 U.S. 648, 658 (1984) (noting that because a lawyer is presumed to be competent, "the burden rests on the accused to demonstrate a constitutional violation"). Even if arguendo the letter exists, it fails to establish Mr. Fernandez was not competent because he states the advice to plea was based on his experience and what he heard at the plea hearing, which is "within the range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687-88.

with his client for a particular amount of time before a plea hearing.").

Petitioner has failed to rebut the presumption that Mr. Fernandez was constitutionally competent. Cronic, 466 U.S. at 658. Therefore, based on the foregoing reasons, the Court denies Petitioner's ineffective assistance of trial counsel claim.

**Ground Two:       Ineffective Assistance of Appellate Counsel**.

In ground two, Petitioner argues that his appellate counsel was ineffective on direct appeal for failing to raise the issue regarding the trial court's denial of Petitioner's motion to withdraw plea filed prior to sentencing. Additionally, Petitioner argues that he is entitled to an evidentiary hearing on this issue.

In support of ground two, Petitioner asserts that his motion to withdraw his plea was premised upon numerous grounds including: the involuntary nature of the plea, no actual plea agreement being signed, no score sheet being presented, counsel not investigating the case or filing any motions, the uncertainty of Petitioner's sentence, and the uncertainty of the prerequisite assistance, Petitioner could give, for a low-end Guideline sentence. Petitioner contends that the issue was ripe for appellate review, that there is reasonable probability that said motion would have been a successful claim on appeal, as it was filed before sentencing, and that there was fair and just reason for Petitioner to withdraw his plea. Petitioner further alleges that he was originally coerced into cooperating with and forfeiting all his property to law enforcement, that his plea deals were fabricated and never honored, that he truly wanted to go to trial, and that the state court's denial of said motion was unreasonable and arbitrary pursuant to Strickland.

Regarding the merits of Petitioner's claim, the Court notes that appellate counsel cannot be deemed ineffective for failing to raise a claim that lacks merit. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) ("[E]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "raising every single frivolous point on appeal is not a sign of effective counsel and 'often has the effect of diluting the import of stronger points.'") (citation omitted). At the hearing on the motion to withdraw, Petitioner argued that his plea was not voluntary. However, the circuit court rejected this contention:

> THE COURT:    Well, based on the transcript of the plea and I think that's the controlling document here is what went on at the plea and a plea colloquy in front of me because while I may not have a whole lot of discretion I am the one that makes the decision as to whether or not the plea is freely and voluntary [sic] entered and it was obvious to me at the time the plea was taken it's obvious from the transcript that it was a free and voluntary plea.
>
> Now, whether upon reflection of that after spending the last couple of years in jail he now thinks he has other options that is up to him but there is no doubt in my mind and there's no doubt in the record that he knew what he was facing, that he knew what the minimum and maximum penalties were and that he entered into this agreement knowingly and voluntarily. So I'm going to deny the motion to withdraw the plea.

(Rcd. Ex. #19, Vol. 2 at 241-242).

Accordingly, the circuit court denied Petitioner's motion because the record clearly illustrated that his plea was voluntary. Petitioner asserts that his motion was premised

upon numerous grounds and that there would have been a reasonable probability of success on appeal. Petitioner relies on <u>U.S. v. Cesal</u>, 391 F.3d 1172 (11th Cir. 2004), for the proposition that "[a] defendant may withdraw a guilty plea before a sentence is imposed if he shows a 'fair and just reason' for the withdrawal." <u>Cesal</u>, 391 F.3d at 1179. Petitioner also emphasizes that "[a] pre-sentence motion to withdraw is to be liberally construed." <u>Id.</u> The Court emphasizes, however, that "there is no absolute right to have a guilty plea withdrawn" and that the totality of the circumstances must be examined. <u>Id.</u> Petitioner argues he had fair reasons to withdraw his plea, and that he "could go on and on with reasons to withdraw the plea" (Dkt. #2 at 17-18). Yet the only reasons Petitioner proffer are that the State manipulated him by fabricating a plea agreement, and the subsequent plea he entered into was not free and voluntary. These assertions are contrary to the conclusions of the circuit court, which found that no initial plea agreement had been entered into, and that the "plea was knowing and voluntary." The court also found that Petitioner admitted "factual guilt" on the record. <u>See Cesal</u>, 391 F.3d at 1179 (listing circumstances to consider in determining whether a defendant has given a fair and just reason to withdraw). Therefore, the Court concludes that Petitioner did not present a just reason to withdraw. As such, Petitioner's motion lacked merit. Because Petitioner's motion lacked merit, his appellate counsel's decision to omit the claim on appeal was not deficient performance, but rather sound strategy. <u>See Strickland</u>, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (citation omitted); <u>see also Robinson v. State</u>, 761 So. 2d 269, 274 (Fla.

1999) ("In order to show cause why the plea should be withdrawn, mere allegations are not enough; the defense must offer proof that the plea was not voluntarily and intelligently entered. Further, on appeal . . . the burden rests on the defendant to show the trial court abused its discretion in denying the defendant's motion.") (citation omitted); Tanzi v. State, 964 So.2d 106, 114 (Fla. 2007) (reasoning that because "the trial court's findings are supported by competent, substantial evidence in the record . . . the trial court did not abuse its discretion"); Hunt v. State, 613 So.2d 893, 896 (Fla. 1992) ("It is within the sound discretion of the trial court whether to allow the withdrawal of a guilty plea."). Consequently, not only did Petitioner fail to establish that his counsel rendered deficient performance, Petitioner was also not prejudiced by his counsel's decision not to appeal the state court's denial of Petitioner's motion to withdraw the plea. See Cross v. U.S., 893 F.2d 1287, 1290 (11th Cir. 1990) (recognizing there is no prejudice from omission of a claim lacking merit because the claim would not affect the outcome of the appeal).

Therefore, because the state court's denial of Petitioner's ineffective assistance of appellate counsel claim was neither "contrary to, or involved an unreasonable application of" Strickland, the Court determines the petition should be denied.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondent, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on February 2, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

F:\Docs\2007\07-cv-1107.deny 2254.wpd